UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        -against-

DARWIN ALEXANDER MARTINEZ-CASTILLO,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

23-cr-205 (LAK)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-26-2023

**MEMORANDUM OPINION**

      Appearances:

                Elizabeth Daniels
                Assistant United States Attorney
                DAMIAN WILLIAMS
                UNITED STATES ATTORNEY

                Kristoff Isiah Williams
                FEDERAL DEFENDERS OF NEW YORK, INC.
                *Attorney for Defendant*

LEWIS A. KAPLAN, *District Judge.*

      The defendant, Darwin Alexander Martinez-Castillo, has been indicted on a single count of illegal re-entry into the United States, in violation of 8 U.S.C. § 1326(a). The matter now is before the Court on the defendant's motion to dismiss the indictment. For the reasons set forth below, his motion to dismiss is denied.

2

*Facts*

Mr. Martinez-Castillo first arrived in the United States from Honduras, his home country, in 2008, when he was eighteen years old.[1]  He entered the United States by swimming across the Rio Grande River and arriving near Brownsville, Texas, where he was apprehended by immigration officers.[2] Mr. Martinez-Castillo informed the immigration officers that he was a citizen of Honduras, was seeking to gain entry into the United States to find employment in New York and to reside there for a period of three years, and that he did not possess any documents that would allow him to remain legally in the United States.[3]  Given that he lacked any such documentation, he was processed for expedited removal pursuant to 8 U.S.C. § 1225(b)(1) (Section 235(b)(1) of the Immigration and Nationality Act). "Expedited removal" is a process that authorizes the removal of a non-citizen from the United States "without further hearing or review unless the [non-citizen] indicates either an intention to apply for asylum . . . or a fear of persecution."[4]

As part of the expedited removal process, Mr. Martinez-Castillo participated in producing a Form I-867A/B, which is entitled "Record of Sworn Statement in Proceedings under Section 235(b)(1) of the [Immigration and Nationality] Act."[5]  That form, which was read to Mr.

---

[1]  Dkt 10 (Def. Mem.) at 5.

[2]  Dkt 10-1, Ex. 1 to Def. Mem., Form I-831, at 2.

[3]  *Id.* at 2-3.

[4]  8 U.S.C. § 1225(b)(1)(A)(i).

[5]  8 C.F.R. § 235.3(b)(2)(i) ("In every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements

3

Martinez-Castillo in Spanish, stated in relevant part that:

> "You do not appear to be admissible or to have the required legal papers
> authorizing your admission to the United States. This may result in your being denied
> admission and immediately returned to your home country without a hearing. If a
> decision is made to refuse your admission into the United States, you may be
> immediately removed from this country, and if so, you may be barred from reentry
> for a period of 5 years or longer."[6]

Mr. Martinez-Castillo's responses to the questions on the Form I-867A/B indicate (1) that he

understood what he was told by the immigration officer, (2) that he did not possess any documents

that would permit him to enter, live, or work in the United States, (3) that he knew it was illegal to

enter the United States the way he did, (4) that he did not have any fear of being persecuted or

harmed if he were to return to his home country, and (5) that he understood that he had the right to

speak with a consular or diplomatic officer of his home country and declined to do so.[7]

The immigration officer determined Mr. Martinez-Castillo to be "inadmissible as

charged [(under Section 7(A)(i)(I) of the Immigration and Nationality Act, for lacking any valid entry

---

made by the alien. This shall be accomplished by means of a sworn statement using Form
I–867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act.
The examining immigration officer shall read (or have read) to the alien all information
contained on Form I–867A. Following questioning and recording of the alien's statement
regarding identity, alienage, and inadmissibility, the examining immigration officer shall
record the alien's response to the questions contained on Form I–867B, and have the alien
read (or have read to him or her) the statement, and the alien shall sign and initial each page
of the statement and each correction.").

[6] Dkt 10-3, Ex. 3 to Def. Mem., Form I-867A/B, at 1.

[7] *Id.* at 2-4.

document)] and ordered removed from the United States."[8]  That determination is contained in the Form I-860 prepared for Mr. Martinez-Castillo, which is the official charging document in an expedited removal entitled "Notice and Order of Expedited Removal." A federal regulation requires that "the examining immigration official shall serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt."[9]  One of the immigration officers who signed Mr. Martinez-Castillo's Form I-860 attested to serving the form on Mr. Martinez-Castillo by signing the certificate of service at the bottom of the form. However, "there is no record of Mr. Martinez-Castillo signing the back of the Form[ I-860]."[10]

After being removed from the United States pursuant to the 2008 expedited removal order, Mr. Martinez-Castillo returned to the United States, according to the government, "without

---

[8]     Dkt 10-2, Ex. 2 to Def. Mem., Form I-860.

[9]     8 C.F.R. § 235.3(b)(2)(i) ("The examining immigration officer shall advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt. Interpretative assistance shall be used if necessary to communicate with the alien."). Mr. Martinez-Castillo does not argue that the immigration officer did not "advise [him] of the charges against him . . . on Form I-860" or that he was not "given an opportunity to respond to those charges in the sworn statement." Instead, he argues that "a missing signature on the Form I-860 undermines the assurance that Mr. Martinez-Castillo was notified of the charge against him."  Dkt 10 (Def. Mem.) at 14.

[10]     Dkt 10 (Def. Mem.) at 7.

According to the government, "[t]he original copy of the Form I-860 is not available. In consequence, the [p]arties cannot determine one way or the other whether the defendant signed the back of the Form I-860, consistent with federal regulations." Dkt 12 (Govt. Opp. Mem.) at 4.  For purposes of this decision, the Court assumes that Mr. Martinez-Castillo's signature was not obtained on the Form I-860.

authorization six times."[11]  He previously pleaded guilty to a single count of illegal re-entry in this district in February 2019 and was sentenced to time served.[12]  On April 5, 2019, he was removed from the United States.[13]  The government alleges that he most recently returned to the United States without permission "on or before March 27, 2022," and was found here "when he was arrested in the Bronx by the New York City Police Department," which triggered the illegal re-entry charge that he now faces.[14]

### *Discussion*

Mr. Martinez-Castillo argues that his indictment should be dismissed because the underlying expedited removal order upon which it is based was "fundamentally unfair."  He argues that is so because immigration officials failed to obtain his signature on the back of the Form I-860, as required by federal regulation.

*Legal Framework*

Section 276 of the Immigration and Nationality Act[15] makes it illegal for a person who has been denied admission to or previously removed from the United States to re-enter the

---

[11] Dkt 12 (Govt. Opp. Mem.) at 4.

[12] Dkt 1 (Compl.) at 3.

[13] *Id.*

[14] Dkt 12 (Govt. Opp. Mem.) at 4.

[15] 8 U.S.C. § 1326.

country absent express consent from the United States Attorney General or showing that he or she was not required to obtain such consent.[16]   A person who is charged with illegally re-entering the United States after being removed "can defend against this charge by challenging the validity of the deportation order upon which the charge is predicated."[17]   "To do so, however, [the person] must 'demonstrate [ ] that[](1) [he or she] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him or her] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.'"[18]   The parties agree that in the circumstances of an expedited removal order, as here, Mr. Martinez-Castillo has satisfied the first and second requirements.[19]   They

---

[16]   *Id.* § 1326(a).

[17]   *United States v. Calderon*, 391 F.3d 370, 374 (2d Cir. 2004).

[18]   *Id.*(second alteration in original) (quoting 8 U.S.C. § 1326(d)).

[19]   As explained by defense counsel, "[e]xcept in circumstances that are not applicable here, an individual, like Mr. Martinez-Castillo, who is subjected to expedited removal under 8 U.S.C. § 1225(b)(1)(A)(i), satisfies the first and second prongs of the § 1326(d) analysis because the expedited removal process does not provide for any administrative remedies or judicial review. *See* 8 U.S.C. § 1225(b)(1)(C) ('Except as provided . . . a removal order entered in accordance with subparagraph (A)(i) or (B)(iii)(I) is not subject to administrative appeal . . . .'); 8 U.S.C. §1225(b)(1)(A)(i) ('If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . . the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution.'); 8 U.S.C. § 1252(a)(2)(A)(i) ('[N]o court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title.')." Dkt 10 (Def. Mem.) at 8. *See also* Dkt 12 (Govt. Opp. Mem.) at 5 ("The defendant has satisfied the first and second requirements but cannot satisfy the third."); *United States v. Espinoza*, 442 F. Supp. 3d 596, 604 (S.D.N.Y. 2020) ("[The defendant] has met the requirements that he exhaust his administrative remedies and show that he was deprived of an opportunity for judicial review.").

dispute only the third requirement, whether the expedited removal order upon which Mr. Martinez-Castillo's charge of illegal re-entry is based is fundamentally unfair.[20]

To establish that a removal order was fundamentally unfair, the defendant must show "both a fundamental procedural error and prejudice resulting from that error."[21]   "[P]rejudice is shown where there is a reasonable probability that, but for the [procedural] error[], the alien would have been granted . . . relief."[22]   "A reasonable probability has been defined as a 'probability sufficient to undermine confidence in the outcome,' . . . and quantified as a twenty percent probability that relief would have been granted absent the error."[23]

---

[20]

Section 235(b)(1)(D) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(1)(D), provides that "[i]n any action brought against an alien under . . . section 1326 of this title [(section 276 of the Immigration and Nationality Act)], the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii)." 8 U.S.C. § 1225(b)(1)(D). Consistent with the decisions of other courts and the general principle that courts "ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable," the Court does not now decide whether the jurisdictional bar in § 1225(b)(1)(D) is unconstitutional as applied here. *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944). *See, e.g., Espinoza*, 442 F. Supp. 3d at 604, n.2 (citing cases); *United States v. Martinez-Zavala*, No. 09-cr-1774 (BTM), 2009 WL 2485751, at *7 (S.D. Cal. Aug. 11, 2009) ("Nonetheless, even if the Court were to find that the expedited removal proceeding here violated [the defendant's] procedural due process rights, he has not adequately demonstrated prejudice as a result of the alleged violation. Therefore, the Court does not reach the question of whether it properly has jurisdiction to consider the defendant's § 1326(d) attack on his removal order in spite of § 1225(b)(1)(D)."). *See also* Dkt 10 (Def. Mem.) at 9-10 ("Every circuit court to analyze this statute, however, has held that § 1225(b)(1)(D) is unconstitutional because it impermissibly deprives a defendant of their due process rights in a criminal prosecution.") (citing cases); Dkt 12 (Govt. Opp. Mem.) at 6 n.3 ("The Government does not dispute that the Motion is reviewable under Section 1326(d), notwithstanding Section 1225(b)(1)(D).").

[21]

*Calderon*, 391 F.3d at 376 (quoting *United States v. Perez*, 330 F.3d 97, 104 (2d Cir. 2003)).

[22]

*United States v. Copeland*, 376 F.3d 61, 73 (2d Cir. 2004).

[23]

*United States v. Brown*, 354 F. Supp. 3d 362, 371 (S.D.N.Y. 2018) (quoting *United States v. Lopez*, 445 F.3d 90, 100 (2d Cir. 2006) and citing *United States v. Copeland*, 369

8

The relief of which Mr. Martinez-Castillo argues he was deprived due to immigration officials' failure to obtain his signature on the Form I-860 was being able to request to withdraw his application for admission, which is the only form of relief available in the expedited removal context. The statute and regulations provide in relevant part that:

> "An alien applying for admission *may*, in the *discretion* of the Attorney General and at any time, *be permitted to withdraw the application for admission* and depart immediately from the United States."[24]

> "The Attorney General *may*, in his or her *discretion*, *permit any alien applicant for admission to withdraw his or her application for admission in lieu of . . . expedited removal* under section 235(b)(1) of the [Immigration and Nationality] Act. The alien's decision to withdraw his or her application for admission must be made voluntarily, but *nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission*. Permission to withdraw an application for admission should not normally be granted unless the alien intends and is able to depart the United States immediately."[25]

Mr. Martinez-Castillo argues that the failure to obtain his signature on the Form I-860 "deprived him of the opportunity to seek immigration relief in the form of a request to withdraw his application for admission, which would have resulted in his return to his native country without the order of removal

---

F.Supp.2d 275, 288 (E.D.N.Y. 2005)).

[24] 8 U.S.C. § 1225(a)(4) (emphasis added).

[25] 8 C.F.R. § 1235.4 (emphasis added).

that forms the basis of the charge in this case."[26]   His argument falls short because he fails to demonstrate a sufficient causal connection between the alleged fundamental procedural error (failure to obtain his signature on the Form I-860) and the prejudice he claims (being deprived of an opportunity to request to withdraw his application for admission).

*Prejudice*

Mr. Martinez-Castillo argues (1) that "the failure of an immigration official to obtain the [non-citizen's] signature on the reverse side of the form I-860 is a fundamental procedural error that violates that individual's due process rights"[27] and (2) that he was prejudiced as a result of this due process violation.   The Court does not now address whether the failure to obtain Mr. Martinez-Castillo's signature on the Form I-860 constituted fundamental procedural error because it finds that even if it were, such failure did not deprive Mr. Martinez-Castillo of the opportunity to request to withdraw his application for admission.[28]

The crux of Mr. Martinez-Castillo's contention with respect to prejudice is that:

"[T]here is a reasonable probability that having [him] sign the Form I-860 . . . would have prompted questions on his part, such as whether the charge was serious and/or whether there was a way to avoid the charge. These questions, in turn,

---

[26]   Dkt 10 (Def. Mem.) at 5.

[27]   *Id.* at 12.

[28]   Nor does the Court at this time make any determination with respect to whether there exists a right to be informed of the ability to request discretionary relief from expedited removal in these circumstances, as it is unnecessary to address that question to decide this motion.

reasonably could have triggered a discussion surrounding discretionary relief, ultimately leading Mr. Martinez-Castillo to request the withdrawal of his application for admission. . . . Additionally, Mr. Martinez-Castillo certainly had plausible grounds to successfully withdraw his application for admission, as three out of the six [Inspector's] Field Manual factors weigh in his favor and the factor pertaining to humanitarian and public interest considerations is neutral. "[29]

The principal flaw in Mr. Martinez-Castillo's argument is that it fails to demonstrate how obtaining his signature on the Form I-860 would have provoked the aforementioned chain of inferences. The Form I-860 does not state that the person who is determined to be inadmissible and is subject to expedited removal may request to withdraw his or her application for admission. Nor does it state anywhere that if such an application were to be granted, Mr. Martinez-Castillo would have been able return to his home country in lieu of the removal order. As a colleague of mine has explained:

"Even assuming that these alleged violations occurred and that they amount to fundamental procedural error (which the Court need not and does not decide), [the defendant] cannot demonstrate that the prejudice he allegedly suffered – his inability to request discretionary relief from removal – resulted from the violations. [The defendant] must demonstrate that the prejudice he claims resulted from the fundamental procedural errors he alleges. *Cf. [United States v.] Sanchez-Lopez*, [414 F. Supp. 3d 842,] 846 (E.D. Va. 2019)414 F. Supp. 3d at 846 ('Even assuming that

---

[29] *Id.* at 15-16.

the above two errors constituted due process violations, these errors were not causally linked to the prejudice the Defendant claims . . . . Therefore, the alleged prejudice did not occur 'as a result of the defects.'") (citations omitted)[.] . . .

None of the procedural errors alleged by [the defendant] is causally connected to the prejudice he alleges. [The defendant] does not claim that the explanation of his rights on the I-867A included a reference to his ability to request discretionary relief. *Nor does the I-860 contain any such explanation*. *See Sanchez-Lopez*, 414 F. Supp. 3d at 846 ('*Nothing in Form I-860 refers to the possibility of discretionary relief from removal, or an alien's ability to request it.*')."[30]

Mr. Martinez-Castillo does not contend that there is anything specific in the Form I-860 that would have indicated to him that he could have applied to withdraw his application for admission that he could not have appreciated already based on the other facts of his removal. His argument that the Form I-860 "would have prompted questions on his part, such as whether the charge was serious and/or whether there was a way to avoid the charge" fails to convince in these circumstances, where he does not dispute that he understood based on the Form I-867A/B that he entered the United States illegally and did not appear to be admissible. Although "the specific charge against him . . . is only found on the Form I-860 " and "a missing signature on the Form I-860 undermines the assurance that [he] was notified of the charge against him,"[31] he does not explain what, if anything, about the "charge" specifically (that he was found to be inadmissible for lacking any valid entry document)

---

[30]  *Espinoza*, 442 F. Supp. 3d at 610-11 (second and fourth emphases added).

[31]  Dkt 10 (Def. Mem.) at 14.

12

would have triggered him to request to withdraw his application that he did not appear to know already based on his own responses in the Form I-867A/B and other circumstances of his removal.[32]

Mr. Martinez-Castillo argues also that "the government's causal-connection argument suggests that an immigration officer could violate every single procedural requirement set forth in 8 C.F.R. § 235.3(b)(2)(i) and still not prejudice a defendant challenging a prior expedited removal order" because "none of these procedural protections would have otherwise required the immigration official to inform the defendant of their right to withdraw their application for admission."[33] That, however, is not the correct standard. The question of whether a defendant was prejudiced by a fundamental procedural error is a case-specific determination that depends on all of the relevant facts and circumstances at issue. Here, for example, the analysis might have been different if Mr. Martinez-Castillo had not completed the Form I-867A/B, or if there were facts to suggest that he was not otherwise aware of the seriousness and illegal nature of his entry into the United States – circumstances that do not exist in this case.

Accordingly, in these particular facts and circumstances, immigration officials' failure to obtain Mr. Martinez-Castillo's signature on the Form I-860 did not result in a fundamentally unfair removal order so as to require dismissal of the indictment.

### Conclusion

For the foregoing reasons, the defendant's motion to dismiss [Dkt 9] is denied.

SO ORDERED.

Dated:        July 26, 2023

_____
Lewis A. Kaplan
United States District Judge

---

[32]

Indeed, the circumstances of Mr. Martinez-Castillo's initial journey into the United States -- which included swimming across one of the longest rivers in North America – and his subsequent re-entries into the United States demonstrate that he was unlikely to have sought voluntarily to withdraw his application for admission.

[33]

Dkt 13 (Def. Reply Mem.) at 5.